**PLAYBOY ENTERPRISES, INC., a Delaware corporation, Plaintiff,**

v.

**Terri WELLES, Defendant.**

**No. 98–CV–0413–K (JFS).**

United States District Court, S.D. California.

May 21, 1998.

---

Craig Courter, Seltzer, Caplan, Wilkins & McMahon, San Diego, CA, David R. Francescani, Amy Benjamin, and Maryann V. Hayes, Darby & Darby, New York City, for plaintiff.

Michael J. Plonsker, Max J. Sprecher, and Anne Kearns, Lavely & Singer, Los Angeles, CA, for defendant.

### AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

KEEP, District Judge.

On February 27, 1998, plaintiff Playboy Enterprises, Inc. (PEI) filed a Complaint against defendant Terri Welles. The Complaint consists of five causes of action: 1) trademark infringement pursuant to 15 U.S.C. § 1114(1);[1] 2) false designation of registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause

---

1. Title 15 U.S.C. § 1114(1)(a) reads as follows: "Any person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy, or colorable imitation of a

origin and unfair competition under 15 U.S.C. § 1125(a);[2] 3) dilution of trademarks pursuant to 15 U.S.C. 1125(c); 4) trademark infringement and unfair competition under California common law; 5) unfair competition in violation of Cal.Bus. & Prof.Code § 17200, et seq.

On March 18, 1998, plaintiff filed a Motion for Preliminary Injunction. Defendant filed an Opposition on April 6, 1998. Plaintiff filed its Reply on April 13, 1998. The court heard oral arguments on April 20, 1998.

## I. BACKGROUND

The following background facts are taken from the parties' contentions in their papers, but the court does not make any ultimate findings of fact with respect to this case. Plaintiff Playboy Enterprises, Inc. (PEI) is an international publishing and entertainment company. Since 1953, PEI has published *Playboy* magazine, a widely popular magazine with approximately ten (10) million readers each month. PEI also publishes numerous specialty magazines such as *Playboy's Playmate Review*, *Playboy's Playmates of the Year*, and *Playboy's Calendar Playmates* among other publications. In addition to its publishing ventures, PEI produces television programming for cable and direct-to-home satellite transmission and sells and licenses various goods and services including videos.

PEI has established two websites. According to plaintiff, its free website, http://www.playboy.com, has become one of the most popular sites on the Web and is used to promote its magazine, goods, and services. Its other website, called the "Playboy Cyber Club," http://www.cyber.playboy.com, is devoted to promoting current and former PEI models.

PEI owns federally registered trademarks for the terms *Playboy, Playmate, Playmate*

of the Month, and *Playmate of the Year*. The term *Playmate of the Year* is sometimes abbreviated "PMOY." PEI does not have a federally registered trademark in the abbreviation "PMOY," although PEI argues that "PMOY" is worthy of trademark protection because it is a well-known abbreviation for the trademark *Playmate of the Year*.

Defendant Terri Welles is a self-employed model and spokesperson, who began her modeling career with *Playboy* magazine in 1980. In May of 1980, Ms. Welles appeared on the cover of *Playboy* magazine and was subsequently featured as the "Playmate of the Month" in the December 1980 issue. Ms. Welles received the "Playmate of the Year" award in June of 1981. Since 1980, Ms. Welles has appeared in no less than thirteen (13) issues of *Playboy* magazine and eighteen (18) newsstand specials published by PEI. Defendant claims that she has always referred to herself since 1980 as a "Playmate" or "Playmate of the Year" with the knowledge of PEI.

On June 29, 1997, Ms. Welles opened a website, http://www.terriwelles.com, which includes photographs of herself and others (both nude and clothed), a fan club posting board, an autobiography section, and a listing of current events and personal appearances. The domain name for defendant's site is "terriwelles," the heading for the website is "Terri Welles—Playmate of the Year 1981," and title of the link page is "Terri Welles—Playboy Playmate of the Year 1981." Each of the pages uses "PMOY '81" as a repeating watermark in the background. According to defendant, eleven (11) of the fifteen (15) free web pages include a disclaimer at the bottom of the pages, in varying font sizes depending on the page, which indicates that the website is not endorsed by PEI; the disclaimer reads as follows: "This site is neither endorsed, nor sponsored by, nor affiliated with Playboy En-

---

mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided."

**2.** Title 15 U.S.C. § 1125(a)(1)(A) reads as follows: "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or mislead-

ing description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

terprises, Inc. PLAYBOY, PLAYMATE OF THE YEAR and PLAYMATE OF THE MONTH are registered trademarks of Playboy Enterprises, Inc." Defendant uses the terms *Playboy* and *Playmate* along with other terms within the keywords section of the meta tags, which constitutes the internal index of the website used by some search engines.

The site contains link pages to other erotic, adult-oriented websites. It also contains advertising "banners" for some of those websites.

Since May of 1997, defendant has been in contact with plaintiff about the design and creation of her website. Defendant claims that plaintiff, through Marcia Terrones, the director of the "Rights and Permission" department at PEI, informed her that she could identify herself as the "Playmate of the Year 1981" but that she could not reproduce the rabbit head logo on her proposed website. Various communications between defendant and plaintiff ensued. According to defendant, PEI, through Hugh Hefner, initially complimented her website and encouraged her use of the title "Playmate of the Year 1981." However, Mr. Hefner later informed defendant that use of PEI's trademarks were restricted; instead, he invited defendant to join PEI's new Cyber Club. Defendant refused this invitation, and PEI continued to demand that defendant remove the "Playmate of the Year" title from the home page as well as remove the PMOY watermark from the background.

Plaintiff has moved for a preliminary injunction which would enjoin defendant from 1) using the trademarked term *Playmate of the Year* in the title of the home page and the link page; 2) from using the watermark "PMOY '81" in the background; and 3) from using the trademarked terms *Playboy* and *Playmate* in the meta-tagging of defendant's site. Therefore, the task before the court is to determine whether a preliminary injunction against defendant is warranted in this instance.

## II. *STANDARD OF LAW*

To be entitled to a preliminary injunction, a party must show either (1) a combination of probable success on the merits and a possibility of irreparable harm; or (2) the existence of serious questions on the merits and the balance of hardships weighing heavily in its favor. *Vision Sports v. Melville*, 888 F.2d 609, 612 (9th Cir.1989). These are not two distinct tests, but ends of a continuum in which the required showing of harm "varies inversely with the required showing of meritoriousness." *Rodeo Collection v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987) (citation omitted). "Thus, a moving party need not demonstrate that [it] risks irreparable injury, but [it] must at least show that [it] will suffer a degree of hardship that outweighs the hardship facing the opposing party if the injunction is not issued. Similarly, a moving party need not demonstrate that [it] will succeed on the merits, but must at least show that [its] cause presents serious questions of law worthy of litigation." *Topanga Press, Inc. v. City of L.A.*, 989 F.2d 1524, 1528 (9th Cir.1993).

## III. *DISCUSSION*

In general, plaintiff argues that defendant's use of the *Playboy* and *Playmate* trademarks in conjunction with her website is likely to cause confusion, mistake or deception. *See* Complaint at ¶ 32. Specifically, PEI avers that these alleged infringements are harming it and its trademarks since web-surfing consumers are likely to believe that defendant's website is authorized, sponsored or otherwise approved by PEI when it is not. *Id.* Defendant, on the other hand, contends that her use of the title *Playmate of the Year* and the abbreviation *PMOY* is merely a descriptive use of those terms so as to identify herself to her customers. She argues that any other use of PEI's trademarked terms is merely used in an editorial fashion.

In this motion, plaintiff concentrates on defendant's use of the *Playmate of the Year* title in Ms. Welles' web page heading and link page, her use of the *PMOY '81* term as a watermark in the web page background, and her use of the *Playboy* and *Playmate* marks as meta tags. These appear to be the only infringements alleged by PEI; accordingly, the court will focus on these three particular issues in this order.

Based on these alleged infringements, plaintiff states five causes of action against

defendant in its Complaint. However, in this motion, PEI moves for a preliminary injunction on the basis of only three of those causes of action: (First Cause of Action) federal trademark infringement; (Second Cause of Action) false designation of origin under section 43(a) of the Lanham Act; and (Third Cause of Action) dilution under section 43(c) of the Lanham Act. Defendant refers to the first two causes of action as the trademark causes of action and can be treated together. Plaintiff does not make direct reference to the remaining causes of action which are related state law causes of action. Therefore, the court will not address those issues. The court will now address whether a preliminary injunction is warranted in this case.

### A. *Irreparable Harm*

■ "In copyright and trademark cases, irreparable injury is presumed upon a showing of likelihood of success." *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 924 F.Supp. 1559, 1574 (S.D.Cal.1996), *aff'd*, 109 F.3d 1394 (9th Cir.1997). Thus, the court will examine the plaintiff's likelihood of success on the three causes of action upon which it relies.

### B. *Likelihood of Success in Trademark Causes of Action*

■ Plaintiff asserts that defendant is infringing on its registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and that said infringement is causing confusion, mistake, or deception which constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The purpose of a trademark is to allow for customer identification of the manufacturer or sponsor of a good or the provider of a service. *See New Kids on the Block v. New Am. Pub., Inc.*, 971 F.2d 302, 305 (9th Cir.1992).

It is undisputed that PEI owns federally-registered trademarks for the words *Playboy, Playmate, Playmate of the Month*, and *Playmate of the Year.* The term *Playboy* has gained widespread public recognition and is distinctive due in large part to the long-standing success and popularity of *Playboy* magazine and related publications from PEI. *See Playboy Enters., Inc. v. Chuckleberry Publishing, Inc.*, 687 F.2d 563, 566–67 (2d Cir.1982) (holding that the *Playboy* mark is distinctive, widely recognized, and of great value). However, the other trademarks such as *Playmate* are not only trademarks related to *Playboy* magazine, but they are titles bestowed upon particular models who appear in that magazine. From the papers submitted and the oral arguments, it appears that the terms *Playmate, Playmate of the Month*, and *Playmate of the Year* are titles which *Playboy* magazine awards to certain *Playboy* models, who then use the title to describe themselves. Much like Academy Award winners, crowned Miss Americas, and Heisman Trophy winners, *Playboy* Playmates are given a title which becomes part of their identity and adds value to their name. Indisputably, these winners represent the awarding organization or sponsor, but the title becomes part of who they are to the public.

■ In the case of *Playboy* Playmates, PEI encourages these select models to use their titles for their self-promotion and the promotion of its magazines and assorted goods and services. In the case of Ms. Welles, it appears that PEI had no objection to her use of the terms *Playmate of the Year* or *Playboy Playmate* until she launched her competing website.[3] In oral argument, PEI conceded that these models may use their title for their own benefit, as in the title of an autobiography. PEI also admitted that Ms. Welles is not contractually restricted from using the terms *Playmate of the Month* or *Playmate of the Year* based on her previous

---

**3.** Defendant raises the issue of PEI's acquiescence in Ms. Welles' use of the terms *Playmate, Playmate of the Month*, and *Playmate of the Year.* Plaintiff does not contest that it allowed defendant to use these terms previously, but it argues that the defense of acquiescence does not apply in this case since defendant is now engaged in a competitive "trademark use" of those terms. "The defense of acquiescence is a type of estop-

pel which constitutes a ground for denial of relief upon a finding of conduct on plaintiff's part that amounts to an assurance by the plaintiff to the defendant, either express or implied that plaintiff will not assert his trademark rights against the defendant." *CBS Inc. v. Man's Day Publishing Company, Inc.*, 205 U.S.P.Q. 470, 473–74 (1980). The court does not find it necessary to decide if this defense is applicable in this case.

contracts with PEI. However, it contends that Ms. Welles may not trade on PEI's marks so as to compete with PEI; specifically, PEI argues that the prominent use of its marks to attract the attention of potential customers is a trademark infringement as well as a dilution of its marks.

In the papers submitted, the parties engage in an extensive analysis of whether defendant's use of PEI's trademarks creates confusion among websurfers. Indeed, the dispositive legal issue in the standard trademark case concerns "customer confusion." *See WCVB–TV v. Boston Athletic Ass'n,* 926 F.2d 42, 44 (1st Cir.1991). The Ninth Circuit has articulated an eight-factor test which the court may consider in determining the likelihood of confusion: 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) similarity in appearance, sound, and meaning of the marks; 4) evidence of actual confusion; 5) degree to which the marketing channels converge; 6) type of good and degree of care customers are likely to exercise in purchasing them; 7) evidence of the intention of defendant in selecting and using the alleged infringing name; and 8) likelihood that the parties will expand their product lines. *See Metro Pub. Ltd. v. San Jose Mercury News,* 987 F.2d 637, 640 (9th Cir.1993); *see also Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178–79 (9th Cir.1988) (applying a similar six-factor test). These factors are simply helpful guidelines for the determination of potential customer confusion. *See Metro Pub.,* 987 F.2d at 640.

This case, however, is not a standard trademark case and does not lend itself to the systematic application of the eight factors. In the case at bar, defendant has used the terms *Playmate of the Year* and its abbreviation *PMOY* on her website. She has also used the terms *Playboy* and *Playmate* as meta tags for her site so that those using search engines on the Web can find her website if they were looking for a *Playboy* Playmate. The problem in this case is that the trademarks that defendant uses, and the manner in which she uses them, describe her and identify her. This raises a question of whether there is a "fair use" of these marks pursuant to 15 U.S.C. §§ 1115(b)(4) and 1125(c)(4). *See New Kids,* 971 F.2d at 306 (noting that the "fair use" defense arises when the trademark also describes a person, a place or an attribute of a product). Terri Welles was and is the "Playmate of the Year for 1981." Plaintiff has conceded this fact and has not submitted any evidence for the court to conclude that PEI may prevent defendant from using that term to identify herself and her award; as noted above, PEI conceded that there are no contractual agreements between it and defendant which restrict her use of any of the marks. Thus, defendant has raised a "fair use" defense which must be overcome by the plaintiff before a potential infringement under Section 43(a) of the Lanham Act or trademark dilution under Section 43(c) of the Lanham Act may be found.

█ In a case where the "mark is used only to 'describe the goods or services of [a] party, or their geographic origin,' trademark law recognizes a 'fair use' defense." *Id.* (quoting 15 U.S.C. § 1115(b)(4)). Title 15 U.S.C. § 1115(b)(4) states the following:

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin....

*Id.* "'The "fair use" defense, in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods.'" *New Kids,* 971 F.2d at 306 (quoting *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1185 (5th Cir.1980)). In the case at bar, Ms. Welles has used the trademark term *Playmate of the Year* to identify and describe herself. As the court noted above, Ms. Welles earned the title of "*Playboy* Playmate of the Year" in 1981 and has used that title ever since, without objection from PEI.

From the exhibits submitted with the parties' papers and presented at oral argument, it is evident that Ms. Welles has minimized her references to *Playboy* on her website and has not attempted to trick consumers

into believing that they are viewing a *Playboy*-endorsed website. In *Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350, 352 (9th Cir.1969), the Ninth Circuit held that the defendant was able to advertise that he repaired Volkswagen vehicles as long as he did not do so in a manner "which is likely to suggest to his prospective customers that he is part of Volkswagen's organization of franchised dealers and repairmen." *Id.* In the case at bar, Ms. Welles has not created a *Playboy*-related website. She does not use *Playboy* or *Playmate* in her domain name, she does not use the classic *Playboy* bunny logo, she inserted disclaimers which clearly state that the website is not endorsed by PEI, and the font of the *Playmate of the Year 1981* title is not recognizable as a *Playboy* magazine font.

It is clear that defendant is selling Terri Welles and only Terri Welles on the website. There is no overt attempt to confuse the websurfer into believing that her site is a *Playboy*-related website. In this case, then, defendant's use of the term *Playmate of the Year 1981* "is descriptive of and used fairly and in good faith only to describe [herself]." 15 U.S.C. § 1115(b)(4). As such, the use of the abbreviation *PMOY '81* is also permissible since it makes reference to her title as "Playmate of the Year 1981." Since the court finds that "PMOY '81" is a fair description of Ms. Terri Welles, it is not necessary to rule on whether the abbreviation *PMOY* is a protected trademark.

With respect to the meta tags, the court finds there to be no trademark infringement where defendant has used plaintiff's trademarks in good faith to index the content of her website. The meta tags are not visible to the websurfer although some search engines rely on these tags to help websurfers find certain websites. Much like the subject index of a card catalog, the meta tags give the websurfer using a search engine a clearer indication of the content of a website. The use of the term *Playboy* is not an infringement because it references not only her identity as a "*Playboy* Playmate of the Year 1981," but it may also reference the legitimate editorial uses of the term *Playboy* contained in the text of defendant's website. Plaintiff conceded, both in its papers and in oral argument, that defendant may properly use the term *Playboy* in an editorial fashion (i.e. in reference to the Playboy Mansion). Therefore, the court finds that defendant has not infringed on defendant's trademarks by using them in her website meta tags.

■ Since defendant is entitled to the "fair use" defense pursuant to 15 U.S.C. § 1115(b)(4), it is not necessary to determine the likelihood of confusion in this case. However, even if the court were to determine the likelihood of confusion in this case, it does not appear that there is a likelihood that websurfers would think that Ms. Welles' website is endorsed or sanctioned in any way by PEI. Even if Ms. Welles were not entitled to the fair use defense, plaintiff has failed to demonstrate that there is a likelihood of confusion for websurfers. Certainly, the PEI trademarks are strong and are used by PEI to sell adult entertainment on the Internet. Defendant claims she is selling a different class of goods since she is offering her promotional services and related goods like her line of cigars. However, it appears that PEI and Terri Welles are in competition for websurfers who pay money for on-line erotica, regardless of the underlying promotion.

Other factors weigh in defendant's favor. Though she is using the trademarks, she has done nothing else to make her use identical to the *Playboy* trademark. There is no bunny logo, the font for the terms is different, and there is no other indication that PEI is sponsoring the website. Plaintiff has presented no empirical evidence to show that there is actual confusion among consumers. Though not necessary, the lack of any such demonstration weighs in defendant's favor. Finally, it appears that defendant has used the trademarks in good faith. She has removed some of the references per PEI's request, has not used the bunny logo, and has added a disclaimer to the vast majority of her free web pages. *See Consumers Union of U.S. v. General Signal Corp.,* 724 F.2d 1044, 1053 (2d Cir.1983) ("Disclaimers are a favored way of alleviating consumer confusion as to source or sponsorship."). This indicates good faith in the use of the trademarks and weighs in favor of defendant. Hence, even if the court were to apply the Ninth Circuit's eight-factor test, plaintiff has

failed to demonstrate that it would likely succeed in proving that defendant's use of the trademarks causes a likelihood of confusion for the consumer. As the court has already noted, the Terri Welles web page appears to promote Terri Welles only and makes no attempt to connect itself with *Playboy* or PEI.

### C. *Dilution Claim*

■ Given that the court has found that defendant is entitled to the "fair use" defense pursuant to 15 U.S.C. § 1115(b)(4), plaintiff cannot make a sufficient dilution claim under 15 U.S.C. § 1125(c) to warrant the granting of a preliminary injunction. Dilution is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of . . . (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. Title 15 U.S.C. § 1125(c)(1) provides the following:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

*Id.* The section provides factors the court may consider in determining whether a mark is distinctive and famous. *See* 15 U.S .C. § 1125(c)(1)(A–H). Though PEI's marks are arguably famous, their distinctiveness does not preclude defendant from the fair use of those items.

Under the Federal Trademark Dilution Act, a dilution claim is not actionable if there is a "[f]air use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark." 15 U.S.C. § 1125(c)(4)(A). As the court has indicated, Ms. Welles' use of the terms *Playmate* and *Playmate of the Year* constitute identification of herself. The use of those terms, in the website and in the meta tags, allows websurfers and potential customers to identify her services, whether it be her line of cigars, her promotional services, or her nude photographs. Given that Ms. Welles is the "Playmate of the Year 1981," there is no other way that Ms. Welles can identify or describe herself and her services without venturing into absurd descriptive phrases. In cases where the trademarked term must be used to identify the individual or a good, infringement and dilution laws do not apply. *See New Kids,* 971 F.2d at 306 ("In such cases, use of the trademark does not imply sponsorship or endorsement of the product because the mark is used only to describe the thing, rather than to identify its source."). Accordingly, plaintiff has failed to show that there is a likelihood of success on the merits of its dilution claim.

### IV. *CONCLUSION*

In *Prestonettes v. Coty,* 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924), Justice Holmes explained the purpose of trademark protection and noted that "[w]hen the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo." In this case, Ms. Welles has used PEI's trademarks to identify herself truthfully as the "Playmate of the Year 1981." Such use is not "taboo" under the law. Based on the foregoing analysis, the court finds that plaintiff has failed to demonstrate that a preliminary injunction is warranted since there is not a strong likelihood of success on the merits. Consequently, the court cannot find that the balance of harm tips strongly enough in plaintiff's favor to overcome the lack of meritoriousness the court has found. *See Stokely–Van Camp Inc. v. Coca–Cola. Co.,* 2 U.S.P.Q.2d 1225, 1227 (N.D.Ill.1987). In addition, it is unclear that irreparable harm would ensue from the continued operation of Ms. Welles' website since plaintiff has not demonstrated that there is a likelihood of confusion. As such, the court, hereby, **DENIES** plaintiff's Motion for a Preliminary Injunction.

**IT IS SO ORDERED.**