**Nicholas KASSBAUM, aka Nick St. Nicholas, Plaintiff–Appellant,**

v.

**STEPPENWOLF PRODUCTIONS, INC.; Steppenwolf, Inc.; Joachim Fritz Kreudeldat, aka John Kay, Defendants–Appellees.**

No. 99–55656.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 2000

Filed Dec. 29, 2000

Allen Hyman, Law Offices of Allen Hyman, North Hollywood, California, for the plaintiff-appellant.

Leonard S. Machtinger, Kenoff & Machtinger, Los Angeles, California, for the defendant-appellee.

Daniel J. Quisenberry, Nevers, Palazzo, Maddux & Packard, PLC, Westlake Village, California, for the amicus curiae.

Before: PREGERSON, W. FLETCHER, and GOULD, Circuit Judges.

RONALD M. GOULD, Circuit Judge:

This case raises the issue of whether a contract between the parties or section 32(1)(a) of the Lanham Trade–Mark Act, 15 U.S.C. § 1114(1)(a) ("Lanham Act"), bars Nicholas Kassbaum ("Kassbaum"), a former member of the rock band "Steppenwolf," from referring to himself in promotional materials for a new band as "formerly of Steppenwolf," an "original member of Steppenwolf," or an "original founding member of Steppenwolf."

Kassbaum filed a complaint in federal district court seeking a declaration that he is not barred by any contract or by the Lanham Act from referring to himself as a former member of Steppenwolf. The district court (1) dismissed Kassbaum's complaint for declaratory relief; (2) granted Steppenwolf Productions, Inc. ("SPI") and Steppenwolf, Inc.'s ("SI") motion for summary judgment on both the complaint for declaratory relief and SPI's counterclaim for breach of contract;[1] (3) granted SPI and SI's request for a permanent injunction; and (4) denied Kassbaum's motion for reconsideration. Kassbaum appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse. The district court erred by (1) granting summary judgment to SPI and SI; (2) dismissing Kassbaum's complaint for declaratory relief; and (3) granting SPI and SI's motion for a permanent injunction. We hold that Kassbaum is not barred by contract or by the Lanham Act from truthfully referring to himself, in promotional materials or otherwise, as a former member of Steppenwolf.

## FACTS AND PROCEDURAL HISTORY

In 1967, John Kay, Jerry Edmonton, Michael Monarch and Goldie McJohn formed a musical band called "Steppenwolf." In 1968, Nicholas Kassbaum, who is professionally known as "Nick St. Nicholas," joined Steppenwolf as a bass player. That year, the band members entered into a partnership agreement whereby the members became co-equal partners and owners in Steppenwolf, and agreed to share equally the band's expenses and income. Also in 1968, the band members signed a recording agreement with Dunhill Records both as partners and as Steppenwolf band members.

From late 1968 until late April 1970, Steppenwolf, with Kassbaum as its bass player, toured the world in concerts and recorded Steppenwolf's well-received music. Kassbaum appeared prominently on Steppenwolf record album covers and authored Steppenwolf compositions. In 1971, John Kay, who had asserted control

---

1. SPI and SI also brought counterclaims alleging unfair competition, trademark infringement and dilution of trademark, but, after the district court denied Kassbaum's motion for reconsideration of the summary judgment order, SPI and SI moved to dismiss these claims. The district court granted the motion to dismiss without prejudice.

over Steppenwolf, excluded Kassbaum from the band.

In 1975, after Kassbaum and Michael Monarch had been excluded, and John Kay had stopped performing as Steppenwolf, Kassbaum and Goldie McJohn began to perform as "The New Steppenwolf." This began a series of legal disputes over the different band members' use of the name Steppenwolf.

In 1976, Kassbaum filed a complaint against SI and SPI to obtain an order prohibiting SPI from interfering with Kassbaum's performances as The New Steppenwolf. In 1977, Kassbaum paid $17,500.00 to John Kay and SPI in exchange for their agreement to grant Goldie McJohn and Kassbaum the exclusive right to the use of the name Steppenwolf for the purposes of live performances and recordings.

In 1979, Kassbaum entered into a second agreement whereby SI and SPI granted The New Steppenwolf, Inc. the exclusive right to use the name Steppenwolf until 1981 in connection with recording, production, manufacture, sale and distribution of records and tapes containing performances of a musical group. Kassbaum performed as Steppenwolf from 1977 through 1980.

On May 27, 1980, Kassbaum, The New Steppenwolf, Inc., SI and SPI entered into a third contract ("the 1980 contract") which states, in relevant part:

*ACKNOWLEDGEMENT [sic] AND WAIVER.*

[KASSBAUM], THE NEW STEPPENWOLF, INC. and GEOFFREY EMORY hereby acknowledge and agree that [SI] and [SPI] own all right, title and interest in the name "STEPPENWOLF". [KASSBAUM], THE NEW STEPPENWOLF, INC., and GEOFFREY EMORY hereby acknowledge and agree that [SI] and [SPI] have the sole and exclusive right to use the name "STEPPENWOLF" in connection with the production, manufacture and distri-

bution of phonograph records, in live, in-concert performances of a musical group, and all other uses of the name "STEPPENWOLF" in the entertainment industry. [KASSBAUM], THE NEW STEPPENWOLF, INC. and GEOFFREY EMORY now and forever, waive, relinquish and release any and all of their individual or collective rights in the name "STEPPENWOLF" or any other word or phrase incorporating the name "STEPPENWOLF" for any purpose whatsoever. [KASSBAUM], THE NEW STEPPENWOLF, INC. and GEOFFREY EMORY hereby agree to waive, relinquish and release any trademark, trade name, service mark, or service name rights any or all of them may have in the name "STEPPENWOLF." [KASSBAUM], THE NEW STEPPENWOLF, INC. and GEOFFREY EMORY further agree to transfer or assign all such trademark, trade name, service mark or service name rights they may have in the name "STEPPENWOLF" to [SI] and [SPI]. Notwithstanding anything to the contrary in the foregoing, nothing contained herein shall be deemed an acknowledgment on the part of [SI] and [SPI] that [KASSBAUM], THE NEW STEPPENWOLF, INC., and/or GEOFFREY EMORY, ever acquired or held any such trademark, trade name, service mark or service name right in the name "STEPPENWOLF."

The contract also provided that, in exchange for this acknowledgment and waiver, "[SI] and [SPI] agree to pay [KASSBAUM], THE NEW STEPPENWOLF, INC. and GEOFFREY EMORY the sum of THREE THOUSAND DOLLARS ($3,000.00)."

From 1980, when the contract was executed, until 1996, Kassbaum performed as "Lone Wolf." During that time, without objection from the parties to the 1980 contract, Kassbaum referred to his historical association with Steppenwolf, describing

**490**

himself as a "former member of" or "previous member of" Steppenwolf.

From 1996 until the present, Kassbaum has performed in a group called World Classic Rockers. The group is comprised of former members of various musical groups well known to rock music fans including: Randy Meiser, a former member of "Wings;" Spencer Davis, a former member of the "Spencer Davis Group;" Bruce Gary, a former member of "Knack;" and Michael Monarch and Kassbaum, former members of Steppenwolf. While performing as the World Classic Rockers, Kassbaum and the other band members often identified themselves by referring to their former musical associations. For example, one advertisement identifies Kassbaum as "NICK ST. NICHOLAS former member of Steppenwolf." Kassbaum also promoted himself as being a "Former Original Member of Steppenwolf," "Original Founding Member of Steppenwolf," and "Formerly of Steppenwolf."

In response to these promotional claims, SPI and SI sent Kassbaum cease and desist letters asserting that Kassbaum's historical references to Steppenwolf violated federal trademark law and the 1980 contract. Kassbaum then filed a complaint in federal district court seeking a declaration that he is entitled to refer to himself as "Formerly of Steppenwolf," an "Original Member of Steppenwolf," and an "Original Founding Member of Steppenwolf." SPI answered and filed a counterclaim alleging trademark infringement, unfair competition and breach of contract.[2] Thereafter, SPI and SI moved for summary judgment on Kassbaum's complaint for declaratory relief and SPI's counterclaim for breach of contract. SPI and SI also sought permanently to enjoin Kassbaum and his agents from using the name Steppenwolf.

The district court granted SPI and SI's motion for summary judgment on Kassbaum's complaint for declaratory relief, granted SPI's counterclaim for breach of contract, dismissed Kassbaum's complaint for declaratory relief, and granted SPI and SI's request for a permanent injunction forbidding Kassbaum from using the designations "Formerly of Steppenwolf," "Original Member of Steppenwolf" and "Original Founding Member of Steppenwolf," in promotional materials.

Kassbaum appeals, contending that the district court erred. We agree, and we reverse and remand.[3]

## DISCUSSION

### I.

*Summary Judgment and Dismissal of Declaratory Judgment Complaint*

We must decide whether either the 1980 contract or the Lanham Act bars Kassbaum from referring to himself as a former member of Steppenwolf.

#### A. The Contract

As described above, the parties entered into the 1980 contract on May 28, 1980. We must decide whether, by the terms of the contract, Kassbaum agreed that he would not identify himself, for promotional purposes or otherwise, with a true statement that he is a former member of the band Steppenwolf.

We review decisions to grant or deny declaratory relief de novo. *Tashima v. Admin. Office of the U.S. Courts,* 967 F.2d 1264, 1273 (9th Cir.1992). Contract interpretation is a question of law we review de novo. *Mendler v. Winterland Prod., Ltd.,* 207 F.3d 1119, 1121 (9th Cir.

---

**2.** Granting a motion by SPI and SI to narrow their counterclaims, the district court dismissed all counterclaims except one relating to breach of contract.

**3.** Kassbaum also appeals the district court's denial of his motion for reconsideration. Be-

cause we hold that the district court erred by granting summary judgment, dismissing Kassbaum's complaint and granting a permanent injunction, we need not and do not reach the reconsideration issue.

2000). We also review grants of summary judgment de novo. *Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.1999). "Summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *United States v. King Features Entm't, Inc.,* 843 F.2d 394, 398 (9th Cir.1988).

■ Under California law,[4] we interpret the 1980 contract by examining the contract's language, the parties' clear intentions as expressed in the contract and the circumstances under which the parties contracted. *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 821, 274 Cal.Rptr. 820, 799 P.2d 1253, 1264 (1990) ("Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract." (internal citation omitted)); Cal. Civ.Code § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.").

As Kassbaum concedes, there is no doubt that the 1980 contract "absolutely precludes" Kassbaum from "performing, sponsoring, or endorsing a band entitled Steppenwolf." The question is whether the contracting parties intended that broad language such as "waive, relinquish and release any and all . . . rights in the name 'STEPPENWOLF' or any other word or phrase incorporating the name 'STEPPENWOLF' for any purpose whatsoever" would bar Kassbaum from such things as truthfully answering a question about his past (for example) on a talk show, distributing a resume, or truthfully describing his past musical affiliations in promotional materials connected with the World Classic Rockers.

Taken out of context, the language "name 'STEPPENWOLF'" and "for any purposes whatsoever," might be read so broadly as to preclude Kassbaum from writing "Steppenwolf" on the sidewalk in chalk. While SPI and SI do not advocate a restriction that broad, they do appear to contend that the contract language prohibits virtually any reference by Kassbaum to the name Steppenwolf in the context of the "entertainment industry." Thus, SPI and SI contend that Kassbaum contracted away his ability to refer to his past association with Steppenwolf in a resume sent to a recording company, or in a music industry interview touching upon his background, or, at the center of this case, in his promotional references relating to his performance with World Classic Rockers.

We must read the words of the 1980 contract in context. Cal. Civ.Code § 1641. ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Id.* § 1650 ("Particular clauses of a contract are subordinate to its general intent."). We may not read the contract in a manner that leads to an absurd result. *Id.* § 1638 (courts must look at contract language to discern parties' intent so long as the result "does not involve an absurdity"); *Id.* § 1639. Rather, when we encounter broad language such as "for any purposes whatsoever," we must extend the meaning of such language to cover only those things which it appears the parties intended to contract. *Id.* § 1648 ("However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."). When broad language is at issue, we must look to the circumstances under which the parties contracted to determine their intentions at the time of contracting. *Id.* § 1647.

---

4. The district court exercised federal question jurisdiction regarding the Lanham Act claim and supplemental jurisdiction regarding the contract claim. State law governs the supplemental contract claim dispute. *See, e.g., Ris-*setto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 601 (9th Cir.1996). Here, the parties are from California, the 1980 contract was formed in California, and we apply California law to the contract claim.

Here, those circumstances are a continuing dispute between the parties about ownership and control over the trade name Steppenwolf. Over the years, such ownership and control was transferred from party to party through a series of contracts. First, all of the original band members owned the trade name Steppenwolf. Then, in 1977, after Kassbaum was asked to leave Steppenwolf and began to perform as The New Steppenwolf, the parties resolved a dispute over the right to the trade name Steppenwolf by having Kassbaum pay $17,500.00 to SPI in exchange for the exclusive right to perform as Steppenwolf for the purpose of live performances and recordings. The parties entered into a second agreement in 1979, whereby SI and SPI granted Kassbaum and The New Steppenwolf, Inc. the exclusive right to use the name Steppenwolf in connection with recording, production, manufacture, sale and distribution of records and tapes embodying performance of a musical group until 1981. At the time the parties entered into the 1980 contract, Kassbaum owned the trade name Steppenwolf to the extent specified by the 1979 contract, and had been performing as The New Steppenwolf. The 1980 contract effected the transfer of the trade name Steppenwolf from Kassbaum and The New Steppenwolf to SPI and SI. Thereafter, Kassbaum discontinued his performances as The New Steppenwolf, and began to perform as Lone Wolf and later as a part of the World Classic Rockers.

Under these circumstances, it is clear that the contract's broad language "for any purposes whatsoever," and "all other uses of the name 'STEPPENWOLF' in the entertainment industry" refers to use of the *trade name* Steppenwolf, and not to the simple use of the name to provide accurate historical information that would not lead reasonable people to think Kassbaum's new band was Steppenwolf. The terms of the contract do not bar Kassbaum from referring to his former membership in Steppenwolf in the entertainment industry or otherwise. We therefore hold that the district court erred by granting summary judgment to SPI and SI on the contract counterclaim and by dismissing Kassbaum's complaint for declaratory relief on contract grounds.

## B. The Lanham Act

Kassbaum's complaint requests, inter alia, a declaratory judgment that section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), does not bar him from stating, particularly in promotional materials, that he was "Formerly of Steppenwolf," an "Original Member of Steppenwolf," or an "Original Founding Member of Steppenwolf." The district court dismissed Kassbaum's complaint and granted SPI and SI's motion for summary judgment. We reverse.

The Lanham Act provides, in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

shall be liable in a civil action by the registrant. . . .

15 U.S.C. § 1114(1).

The purpose of a trademark is to allow customers to identify the manufacturer or sponsor of a good or the provider of a service. *New Kids on the Block v. News. Am. Pub., Inc.*, 971 F.2d 302, 305 (9th Cir.1992). Actual consumer confusion is not required for profit recovery; it is sufficient to show a likelihood of confusion combined with willful infringement. *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir.2000). For the reasons that follow, we believe that Kassbaum's references to himself in promotional materials as "Formerly of Steppenwolf," an "Original Member of

Steppenwolf," and an "Original Founding Member of Steppenwolf," do not cause a likelihood of confusion.[5]

First, we believe the phrases "Formerly of," "Original Member of" and "Original Founding Member of," immediately preceding the name "Steppenwolf" in the promotional materials for World Classic Rockers greatly reduce the likelihood of confusion about the source of the band's music.

Additionally, the context of the historical references to Kassbaum's affiliation with Steppenwolf in World Classic Rockers' promotional materials further reduces any likelihood of confusion between these two bands. In all promotional materials presented to the district court, references to World Classic Rockers are more prominent than are references to Steppenwolf. The materials display the title "World Classic Rockers" on the top or at the center of the page, while references to the band members' former groups, including Steppenwolf, are displayed on the bottom or around the edges of the page. Also, the title "World Classic Rockers" appears in large and bold lettering, while smaller and plainer lettering is used for the titles of the former groups, including Steppenwolf. Finally, while the materials mention multiple former groups, the materials promote only World Classic Rockers, not Steppenwolf, or any other former band.[6]

Our holding is supported by cases in similar contexts. For example, in *Kingsmen v. K–Tel International Ltd.*, 557 F.Supp. 178 (S.D.N.Y.1983), the district court distinguished the likelihood of confusion that exists when a former member of a band re-records a song under the name of the original band from the likelihood of confusion that exists when the former member re-records a song under his own name with the designation "formerly of" the original band displayed on the recording. The first situation, the court stated, created a likelihood of confusion under the Lanham Act, while the latter, although not then before the court, would not. *Id.* at 183–184 ("[W]e would see no objection to defendants' marketing of this particular recording of Louie, Louie under the name of Jack Ely with the caption, 'formerly of the Kingsmen' or 'Jack Ely, lead singer on the original Kingsmen recording of Louie, Louie.' It is the representation that the rendition of Louie, Louie appearing on defendants' album was re recorded by the individuals collectively known as The Kingsmen that we find likely to confuse and therefore objectionable under the Lanham Act.").

In *Playboy Enterprises, Inc. v. Welles*, 7 F.Supp.2d 1098 (S.D.Cal.1998), the district court addressed concerns regarding the differences between commercial trademark use and descriptions of individuals that use trade names. In that case, the publisher of Playboy sued a former "Playmate of the Year" for so designating herself on her personal web site, asserting various claims related to trademark. In denying the publisher's motion for preliminary injunction, the court held that defendant was entitled to the "fair use" defense. *Id.* at 1103. ("The 'fair use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." (In-

---

5. We consider the following factors to test for likelihood of confusion under the Lanham Act: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979).

6. While it is possible that a billboard with "Steppenwolf" printed in eight-foot lettering and "formerly of" printed in two-inch lettering might cause a likelihood of confusion sufficient to support a claim under the Lanham Act, that situation is not before us, and we do not consider it.

ternal quotations omitted)). In holding that the "fair use" defense applied, the court noted that "[i]n the case at bar, Ms. Welles has used the trademark term Playmate of the Year to identify and describe herself.... Ms. Welles earned the title of 'Playboy Playmate of the Year' in 1981 and has used that title ever since, without objection." *Id.* Because the court applied the "fair use" defense, it found it unnecessary to determine the likelihood of confusion under the Lanham Act. *Id.* at 1104. The court, however, went on to state that it did not see any likelihood of confusion under this circuit's eight-factor test. *Id.* at 1104–05.

Finally, we wholeheartedly agree with Justice Holmes's statement about the limits of trademark protection in *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924): "When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo." We reverse the district court's order granting summary judgment to SPI and SI and dismissing Kassbaum's complaint for declaratory judgment as to the Lanham Act issue.

## II.

### *Permanent Injunction*

The district court granted SPI and SI's request for a permanent injunction precluding Kassbaum and his agents from using the designations "Formerly of Steppenwolf," "Original Member of Steppenwolf," and "Original Founding Member of Steppenwolf" in promotional materials. Because we hold that Kassbaum is not barred by contract or by the Lanham Act from using these designations, we reverse.

## III.

### *Declaratory Judgment in Favor of Kassbaum*

Our analysis of issues raised in the context of the district court's summary judgment and dismissal order invites the question whether we will, on appeal, grant Kassbaum the declaratory relief that he sought in the district court notwithstanding that Kassbaum did not move for summary judgment on his complaint. We will not.

■ It is generally recognized that a court has the power sua sponte to grant summary judgment to a non-movant when there has been a motion but no cross-motion. *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982) (When one party moves for summary judgment and at a hearing the record reveals no genuine dispute on a material fact, "the overwhelming weight of authority supports the conclusion that ... the court may sua sponte grant summary judgment to the non-moving party."); *Golden State Transit Corp. v. City of Los Angeles,* 563 F.Supp. 169, 170–71 (C.D.Cal.1983) (When the parties agreed that there were no issues of material fact, the court noted that "[i]n the absence of any factual issues, the Court may grant summary judgment to either party without requiring that a cross-motion be filed."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 at 347 (3d ed.1998).

However, the propriety of granting summary judgment in favor of a party who did not so move is often a "close question." *Sohappy v. Hodel,* 911 F.2d 1312, 1320 (9th Cir.1990) (noting that "[a] close question is presented whether summary judgement should be entered in favor of the plaintiffs although they filed no such motion" and remanding to afford the defendant an opportunity to present evidence on this issue under consideration). Moreover, if a court concludes that a non-moving party is entitled to judgment, "great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law." *Ramsey v. Coughlin,* 94 F.3d 71, 74 (2d Cir.1996)

(quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 at 34 (2d ed. 1983)).

[redacted] Further, we should not reverse a summary judgment and order judgment for a non-moving party based on an issue that the movant had no opportunity to dispute in the district court. *Fountain v. Filson,* 336 U.S. 681, 683, 69 S.Ct. 754, 93 L.Ed. 971 (1949), is instructive. There, based on one issue raised in the plaintiff's claim, the defendants moved for, and the district court granted, summary judgment against the plaintiff. *Id.* at 682, 69 S.Ct. 754. The court of appeals reversed, and, although the plaintiff never cross-motioned for summary judgment, remanded with instructions for the district court to grant summary judgment in favor of the plaintiff based on a second issue raised in the plaintiff's claim. *Id.* The United States Supreme Court reversed, holding that the court of appeals had deprived the defendant of the opportunity to dispute any of the facts relating to the second issue in the plaintiff's claim because the district court had only considered the first issue. *Id.* at 683, 69 S.Ct. 754.

Here, Kassbaum brought a complaint seeking declaratory judgment regarding the 1980 contract and the Lanham Act. When the district court granted summary judgment to SPI and SI on the complaint as a whole, the district court's discussion was limited to the contract issue. While these circumstances do not preclude us from granting summary judgment to Kassbaum, and while we view the issues presented in the declaratory judgment complaint in Kassbaum's favor and are inclined to view the evidence before us as complete, in the exercise of caution we decline to grant sua sponte summary judgment of declaratory relief to Kassbaum on the record before us. The district court may consider this declaratory judgment issue after the parties have notice of our decision and an opportunity to be heard.

## CONCLUSION

We reverse the district court's order (1) granting summary judgment to SPI and SI on the complaint for declaratory judgment and on the contract counterclaim; (2) dismissing Kassbaum's complaint for declaratory judgment; and (3) granting SPI and SI's request for a permanent injunction. We remand to the district court with instructions to reinstate Kassbaum's complaint for declaratory relief and for further proceedings consistent with this opinion.

REVERSED and **REMANDED.**