Tim LAHAYE, Plaintiff-counter-defendant—Appellant,

v.

GOODNEUZ GROUP, LLC, d/b/a Namesake Entertainment, a corporation; Cloud Ten Pictures, Inc., a corporation, Defendants-counter-claimants—Appellees.

No. 04–55839.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2005.

Filed March 2, 2006.

Christopher L. Rudd, Esq., Jackie M. Joseph, Esq., Gorry, Meyer & Rudd, Los Angeles, CA, for Plaintiff–counter–defendant—Appellant.

Michael J. O'Connor, Esq., White O'Connor Curry Gatti & Avanzado, Los

Angeles, CA, for Defendant–counter–claimant—Appellees.

Before: RYMER and WARDLAW, Circuit Judges, and REED,* District Judge.

## MEMORANDUM **

Tim LaHaye appeals the district court's grant of summary judgment to Goodneuz Group on his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. We reverse in part and affirm in part.

### I. Long–Form Agreement

■ We reverse the district court's grant of summary judgment on LaHaye's claim that Goodneuz breached its obligations under ¶ 18 of the parties' contract when it refused to enter into negotiations for a long-form agreement. We view the facts in the light most favorable to the party opposing the motion for summary judgment, and we find a genuine issue of material fact as to whether Goodneuz breached the agreement. "Summary judgment is appropriate when the contract terms are clear and unambiguous...." *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 491 (9th Cir.2000) (internal quotation marks omitted). Here, however, the nature and extent of the obligation imposed by ¶ 18 are ambiguous. Neither the language of the contract, nor the circumstances under which the parties contracted, illuminates the conditions under which a long-form agreement would be "needed." *See id.* (explaining that a court interprets a contract "by examining the contract's language, the parties' clear intentions as expressed in the contract and the circumstances under which the parties contracted"); *see also* Cal. Civ.Code § 1636; *id.* § 1639; *id.* § 1647. Goodneuz's claim that ¶ 18 does not apply because LaHaye's purported request for a long-form agreement in fact sought negotiation of altogether new terms is unavailing; making all reasonable inferences in favor of LaHaye, there is a genuine issue of material fact as to whether LaHaye rightfully exercised ¶ 18 to initiate negotiation of terms related to the exercise of the option and covered under that provision of the contract. Therefore, summary judgment was inappropriate. We also reverse the district court's grant of summary judgment on La-Haye's related claim for declaratory relief for the same reasons.

### II. Theatrical Release

■ We reverse the district court's grant of summary judgment against La-Haye on his claim that Goodneuz breached the implied covenant of good faith and fair dealing by failing to release the film initially in theaters.[1] "The precise nature and extent of the duty" imposed by the covenant varies according to the terms of the contract. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (1979); *see also Third Story Music, Inc. v. Waits*, 41 Cal.App.4th 798,

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. Although the dissent asserts that LaHaye waived this claim, he in fact properly raised it in his first amended complaint, and the district court ruled against him on this claim in granting summary judgment to Goodneuz.

804, 48 Cal.Rptr.2d 747 (Cal.Ct.App.1995) (describing scope of implied covenant). The terms of the contract suggest an implicit obligation to release the film theatrically. To the extent that ¶ 8, which prescribes the consideration the producers must pay for each type of production, contemplates production of a film, it expressly and exclusively prescribes consideration for a "theatrical motion picture"—not for any other kind of motion picture. Further, ¶ 5 provides that the purchase price set forth in ¶ 8 pertains to a "theatrical motion picture."

In addition to the terms of the contract, the circumstances surrounding the making of the contract raise a material question as to whether the video-first distribution strategy breached the implied covenant. LaHaye presents facts that, taken in the light most favorable to him, suggest that in the event the option was exercised and a film was produced, the parties intended and expected the contract to require distribution initially in theaters. Moreover, making all reasonable inferences in favor of LaHaye, there is a material question of fact as to whether a theater-first release of a film is so integral to film distribution that it was understandable not to include an express contractual term requiring a theater-first release, and whether the producers could have in good faith chosen to distribute the film initially on video. See *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937–38 (9th Cir.1999).

We reverse on the same grounds the district court's grant of summary judgment on LaHaye's declaratory judgment claim alleging that the contract required the producers to release the film initially in theaters.

### III. Remaining Claims for Declaratory Relief

■ We affirm the district court's grant of summary judgment on LaHaye's remaining claims for declaratory relief. Because the contract contemplates the possibility that the final budget might not exceed $10 million, there is no question that the contract did not require a minimum budget of some $30 to 40 million. Because the contract contemplates the possibility that the producers could exercise the option as late as April 14, 2000, there is no triable issue as to whether the producers were required to release the film by January 1, 2000. The evidence that LaHaye seeks to introduce, which might suggest a minimum budget of $30 million or a release by January 1, 2000, is inadmissible, as parol evidence can be used to supplement the terms of the contract, but not to contradict the terms of a contract, as LaHaye would seek to do here. Cal.Civ.Proc.Code § 1856(a)-(b).

### IV. Consideration of Parol Evidence

The parties' agreement is not a complete integration. Although the contract states that the agreement is binding and that no other agreements exist, "the parties' inclusion of an integration clause in the written contract is but one factor in this analysis." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir.1995). "The crucial issue in determining whether there has been an integration is whether the parties intended their writings to serve as the exclusive embodiment of their agreement." *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div.*, 852 F.2d 493, 495 (9th Cir.1988) (internal quotation marks omitted); *see also Sylvania Elec. Products, Inc. v. United States*, 198 Ct.Cl. 106, 458 F.2d 994, 1006 (1972) (distinguishing between a fully integrated contract, where "the parties intend that their written agreement shall not only be final, but also the exclusive statement of *all* their agreements," and a partially integrated

contract, where the writing is "intended to be final so far as it goes").

In deciding whether this agreement is partially or fully integrated, we consider three factors: "the language and completeness of the written agreement[,] the terms of the alleged oral agreement and whether they contradict those in writing, [and] whether the oral agreement might naturally be made as a separate agreement[.]" *Sicor*, 51 F.3d at 859 (alterations in original) (internal quotation marks omitted); *see also* Michael S. Bogner, The Problem with Handshakes: An Evaluation of Oral Agreements in the United States Film Industry, 28 Colum. J.L. & Arts 359 (Spring 2005). The parties explicitly provided for additional agreements in ¶ 18. The agreement related only to option rights, and not to the parties' relationship if the producers chose to exercise the option. Details on the rights of the parties in the event that the producers exercised the option would naturally be covered in a separate agreement. Accordingly, we find that the agreement is only partially integrated. In trying the claims for breach of contract, breach of implied covenant, and declaratory relief regarding the long-form agreement and theatrical release, therefore, the district court should consider parol evidence to supplement or explain the terms of the agreement, but not to contradict them. Cal.Civ.Proc.Code § 1856(a)-(b).

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS DISPOSITION.**

RYMER, Circuit Judge, dissenting.

I do not see the same triable issues of fact in the record, and would affirm. The agreement states that it is integrated, La-

Haye so testified, and there were no pre-agreement representations upon which LaHaye relied. The district court so found in findings that are final, after considering parol evidence. There is no evidence that LaHaye ever asked for negotiations on standard terms and conditions; such requests as were made would have added new and different obligations, therefore Paragraph 18 was never triggered. LaHaye waived the "video-first" theory upon which he now argues that his claim for breach of the covenant of good faith and fair dealing should go forward by not raising it in the district court in the summary judgment proceeding. In any event, it can go nowhere because the contract explicitly conveys *all* distribution rights to Namesake. And there is no evidence that selecting the videocassette format was objectively unreasonable or in bad faith.