Bruce Alan MORTON, Plaintiff,

v.

Jim HALL, et al., Defendant.

No. ED CV 04–0831SVW.

United States District Court, C.D. California.

Oct. 5, 2006.

Konrad Trope, Novo Law Group, Irvine, CA, for Plaintiff.

Kenneth G. Lake, Deputy Attorney General, Los Angeles, CA, for Defendants.

ORDER GRANTING–IN–PART AND DENYING–IN–PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [65]

WILSON, District Judge.

## I. INTRODUCTION

Plaintiff Bruce Alan Morton ("Morton") is an inmate in the California prison system.[1] In June 2003, he was attacked by other inmates who believed he was a child molester. He suffered serious injuries, including a slashed throat. He attributes the attack to the negligence and deliberate indifference of prison officials, who allegedly left his prison file in a location where it could be read by other inmates. He sues correctional officials as well as the attacker inmates on theories of negligence, battery, violation of California civil rights, violation of 42 U.S.C.1983, and unlawful confinement Defendants have filed a motion for summary judgment. For the reasons discussed below, the Court GRANTS-in-part and DENIES-in-part Defendants' motion for summary judgment. The court dismisses the § 1983 battery and confinement claims without prejudice for failure to exhaust administrative remedies. The Court grants defendants' motion for summary judgment on the remaining § 1983 claim relating to denial of visitation with minors. The Court declines to exercise supplemental jurisdiction over the state law claims because all of the federal claims have been resolved. Therefore, the state law claims are dismissed without prejudice.

## II. BACKGROUND

### A. *Plaintiff's Factual Allegations*

The alleged events took place while Plaintiff was incarcerated at Ironwood State Prison in Blythe, California (the "Prison"). On June 1, 2003, Plaintiff's confidential file was placed in a location where it could be viewed by other inmates. (First Amended Complaint ("FAC") ¶ 18.) The file suggested that Plaintiff had improper sexual relations with his stepdaughter, although Plaintiff maintains those facts were never proven at trial. (*Id.* ¶ 19.) Plaintiff's repeated requests to Defendants Luna and Hood that he placed in protected custody were rejected. (*Id.* ¶ 21.)

On June 18, 2003, Plaintiff was attacked by other inmates. He suffered a slashed throat, severe lacerations to the neck and head, and disfigurement. (*Id.* ¶¶ 22–25.)

After the attack, Plaintiff was assigned to administrative segregation and confined to a small, isolated cell. Virtually all of his privileges were revoked, including the opportunity to have proper visitations with his family. Correctional officials claimed that Plaintiff posed a threat to prison security, but the nature of the threat has never been revealed to him. Plaintiff was not charged with any wrongdoing. (*Id.* ¶ 26.)

On July 11, 2003, after prison staff reviewed his file, Plaintiff was denied visitation rights with minors pursuant to 15 California Code of Regulations § 3173.1.

Because this Court dismisses Plaintiff's claims on procedural grounds, it is unnec-

---

**1.** He is currently incarcerated at Corcoran State Prison.

essary to further detail the lengthy and conflicting versions of the events in question.

### B. Procedural History

On July 8, 2004, Plaintiff filed his initial complaint ("Original Complaint") in this Court. The Original Complaint named as defendants James Hall ("Hall"), the prison warden; Does 1 through 6, state employees whose identities were unknown to Plaintiff; and Does 7 through 10, the inmate attackers whose identities were also unknown to Plaintiff.

The case was initially assigned to Judge Timlin. It was reassigned to Judge Wilson after Judge Timlin's retirement. On August 29, 2005, the Court granted Plaintiff's request for leave to amend the complaint to add new defendants. On September 8, 2005, Plaintiff filed the First Amended Complaint. The named defendants were: Hall; Hood ("Hood"), a corrections counselor; Albert Luna ("Luna"), also a counselor; Marsh ("Marsh"), the associate warden; Vincent Anderson ("Anderson"), a corrections officer; Christy Hale ("Hale"), a corrections officer; Richard Howell ("Howell"), a corrections officer; Does 1 through 6, state employees whose identities were unknown to Plaintiff; and Does 7 through 10, the inmate attackers whose identities were unknown to Plaintiff.

Plaintiff states four causes of action: (1) negligence for failing to protect Plaintiff from the attack, against all Defendants employed by California; (2) battery, against inmate attackers Does 7 through 10; (3) Eighth Amendment violation under 42 U.S.C. § 1983 for failure to provide for his "personal safety" and for placing him in segregation after the attack, against the employee Defendants; and (4) violation of civil rights guaranteed by the laws of California.

On August 23, 2006, the defendants filed for summary judgment. The Court held a hearing on Monday, September 18.

### C. Testimony at the Hearing Concerning Exhaustion of Administrative Remedies

#### 1. Testimony of Patrick Tonra

Patrick Tonra testified that he worked at Ironwood State Prison in 2002 and 2003 as the Inmate Appeals Coordinator. Tonra stated that he was knowledgeable about the prisoner complaint system, and explained that inmates complaints can be addressed informally or formally.

Inmates are encouraged to address complaints informally by communicating with the relevant staff member. However, prisoners are not required to use the informal complaint system. Instead, an inmate can immediately file a formal complaint by filing a CDC form 602 ("602"). Inmates in administrative segregation are permitted to file such a form.

Prisoners are informed of their appellate rights and the use of 602s as part of the orientation process. Prisoners also have access to Title 15 of the California Code of Regulations, which explains the appeals process. The regulations are maintained and updated.

Inmates can send a 602 to the appeals coordinator through institutional mail or other channels. Once a 602 is received at the institutional appeals office, it is stamped with the date on which it was opened and given a log number. At this point, the complaint is also recorded in the prison's computer database. Therefore, both a hard copy and computer copy of the 602 are maintained.

Staff investigate the complaint, and the findings of the investigation are recorded on the actual 602 form. Staff then transposes the information onto the computer copy of the 602. The 602 is then returned to the prisoner. If the prisoner does not

receive a response within the statutorily proscribed time, the 602 would show up as "delinquent" on the computer system.

If the prisoner disagrees with the result of the investigation, the inmate can appeal the finding by writing a rebuttal to the prior response on the 602. The same 602 form survives the entire appeal process— the prisoner does not need to file a new 602 to appeal at each step of the appeals process.

Tonra stated that he is currently the custodian of records for all 602s at Ironwood. He was not the custodian in 2002 or 2003, but he testified that the system remained in the same format as it is today. He states that all 602s have been maintained in the same location since 2003. As custodian of records, Tonra can pull a hard copy of any individual appeal.

Tonra testified that he examined the hard copies of the records to determine whether Morton had filed any 602s during his time at Ironwood. Tonra discovered that the only 602 filed by Morton concerned being denied visitations from minors.

Tonra also explained that he is familiar with the computer system at Ironwood. Tonra relies on the accuracy of the computer system, and has never discovered a discrepancy between the computer record and the hard copy. No one on Tonra's staff has ever told him of a discrepancy between the hard copy and computer copy. Over 2,000 602s are filed per year at Ironwood.

The computer system at Ironwood is maintained in good condition. Tonra testified that he examined the computer database to see whether Morton had filed any 602s. At the time Tonra examined the database, the computer system was in good working order. Tonra testified that according to the computer database, the only 602 filed by Morton related to visitation with minors.

Therefore, Tonra concluded that Morton had not filed a 602 concerning the alleged assault or confinement while he was a prisoner at Ironwood.

### 2. Testimony of Robert Hall

Robert Michael Hall testified that is currently the Inmate Appeals Coordinator at the California Substance Abuse treatment Facility and State Prison in Corcoran ("Corcoran"). Hall stated that he has been the appeals coordinator since December 2004.

Hall explained that Corcoran maintains a hard copy of 602 appeals forms. Hall is officially in charge of the record keeping, and regularly works with and consults the hard copies. Hall testified that the reviewed the records of the 602s and did not fined any 602 filed by Morton.

Corcoran also maintains an electronic copy of all 602 forms in a computer database. Hall has never noticed a discrepancy between the computer and hard copy versions of a 602, and no one on his staff has ever reported a discrepancy. Hall relies on the computer system for its accuracy, and the system is maintained in good condition. There has never been a system failure since Hall has been employed at Ironwood.

Hall has stated that he thoroughly searched the computer database, and discovered that Morton has not submitted any 602s during his time at Corcoran. (Hall Decl. ¶ 4.) He also explained that he reviewed Morton's Central File ("C–File"). He stated that the C–File revealed that Morton had filed a single 602 during his time at Ironwood, and the 602 related to visitation with minors.

## III. ANALYSIS

Plaintiff asserts one federal law cause of action[2] (42 U.S.C. § 1983) and three state law causes of action (negligence, battery, and violation of California civil rights). The § 1983 cause of action is based on three different claims: (1) battery, (2) unlawful confinement based on the administrative segregation, and (3) denial of visitation rights with minors. For the reasons discussed below, the § 1983 battery and confinement claims are dismissed without prejudice for failure to exhaust administrative remedies. The Court grants defendants' motion for summary judgment on the remaining § 1983 claim relating to denial of visitation with minors. The Court declines to exercise supplemental jurisdiction over the state law claims because all of the federal claims have been resolved. Therefore, the state law claims are dismissed without prejudice. *Croft v. Rowley*, 2006 WL 2422833, *1 (8th Cir.2006).

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997). The moving party is entitled to a judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000).

### A. Section 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State, or Territory or the District of Co-

---

**2.** The Complaint lists five causes of action: (1) negligence, (2) battery, (3) violation of 42 U.S.C. § 1983, and (4) violation of California Civil Rights, and (5) "Unlawful Confinement." The cause of action for the "unlawful confinement" claim is unclear in the Complaint. (*See* Complaint ¶¶ 55–59.) However, Plaintiff explained that "[t]he basis of his entire Complaint is that his rights under the Eighth Amendment were deprived and violated where such violation was committed by those acting under color of state law." (Pl.'s Opp'n at 6.) Because the claim is based on an alleged Constitutional violation by state officials, it must be brought pursuant to 42 U.S.C.1983. Thus, the claim is identical to Plaintiff's 1983 unlawful confinement claim. In fact, throughout the briefs, there is no mention of an unlawful confinement claim except for the 1983 unlawful confinement claim. Therefore, the Court finds that Plaintiff's "fifth" cause of action is merely a duplication of his 1983 cause of action.

lumbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

Plaintiff's § 1983 claim is based on three alleged violations: (1) failure to provide for plaintiff's safety by allowing other inmates access to plaintiff's central file which contained material that might incite an attack upon him, (2) the placement of Plaintiff in protective custody in administrative segregation following the assault, and (3) the restriction of Plaintiff's privilege to have visitation with minors.

Defendants allege that Plaintiff failed to exhaust administrative remedies with respect to the § 1983 claim based on the assault and protective custody confinement. Because the Defendants produced evidence of Plaintiff's failure to exhaust, these § 1983 claims are dismissed without prejudice.

The defendants do not contest Plaintiff's assertion that he exhausted administrative remedies with respect to the denial of visitation with minors. However, even though Plaintiff exhausted administrative remedies with respect to this claim, Defendant's motion for summary judgment is GRANTED because Plaintiff has failed to allege a violation of a right protected by the Constitution or created by federal statute.

*1. Failure to Exhaust the Assault and Protective Custody § 1983 Claims*

■ Plaintiff's § 1983 claims relating to the assault and protective custody should be dismissed for failure to exhaust administrative remedies.

■ Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the type of relief sought or available through the administrative procedures. *Booth v. Churner,* 532 U.S. 731, 734, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The exhaustion requirement applies to all claims relating to prison life unrelated to the duration of the prisoner's sentence. *Porter v. Nussle,* 534 U.S. 516, 520–31, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

■ Failure to exhaust is an affirmative defense which the defendant must raise; it is not a jurisdictional requirement. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003) ("[D]efendants have the burden of raising and proving the absence of exhaustion.") The failure to exhaust administrative remedies "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368–69 (9th Cir.1988); *see also Wyatt,* 315 F.3d at 1119–20. Where a factual dispute exists concerning whether the plaintiff exhausted administrative remedies, "the court has a broad discretion as to the method to be used in resolving the factual dispute." *Ritza* 837 F.2d at 369 (quoting *Moore's Federal Practice* ¶ 56.03, at 56–61 (2d ed.1987)).

Here, Plaintiff has not provided any evidence of exhaustion. In his opposition, Plaintiff states that he "appealed for issues relating to this case beyond an appeal relating to visiting issues." (P.'s Opp'n at 2.)

The Court has read through the Plaintiff's entire C–File and notes that it does

not contain any evidence suggesting that Plaintiff exhausted administrative appeals relating to the assault or confinement. However, the C–File did contain documents demonstrating that Plaintiff appealed the denial of minor visitation. While this suggests that no appeal was taken, the Court can draw no conclusion absent a foundation that all appeals are reliably documented and filed within the C–File.

Defendant has submitted two declarations as evidence that Plaintiff failed to exhaust. The first declaration is an affidavit by Robert Hall, the designated Inmate Appeals Coordinator at the State Prison in Corcoran, California. (Hall Decl. ¶ 1.) Hall describes the multi-step inmate appeals process, and states that he is the custodian of records relating to inmate appeals. (*Id.* ¶ 2.) Hall states that the prison maintains a database of all submitted appeals from 1999 to the present. (*Id.*) Hall states that he searched the database and determined that Morton has submitted no appeals beyond the informal level at the State Prison in Corcoran. (*Id.* ¶ 4.)

The second declaration is by Patrick Tonra, the designated Inmate Appeals Coordinator at Ironwood State Prison in Blythe, California. (Tonra Decl. ¶ 1.) Tonra describes the multi-step inmate appeals process, and states that he is the custodian of records relating to inmate appeals. (*Id.* ¶ 2.) Tonra states that the prison maintains a database of all submitted appeals from 1999 to the present. (*Id.*) Tonra states that he searched the database and determined that the only appeal submitted by Morton was related to the denial of visits from minors. (*Id.* ¶ 3.) Tonra states that this appeal proceeded through the entire appeals process with the appeal being denied at the final, director's level on April 7, 2004. (*Id.*)

Plaintiff objected to these declarations on the grounds that the declarations are not based on sufficient facts or data as required by Federal Rule of Evidence 702, the testimony is not the product of reliable principles and methods, and the declarant has not applied principles and methods reliably to the facts of the case. Additionally, the Plaintiff asks the Court to take judicial notice that the record keeping and computer systems of the California Department of Corrections and Rehabilitation "have been the subject of general criticism and newspapers articles which have asserted deficiencies in such government systems." (Pl.'s Evid. Obj. to Tonra Decl. ¶ 3.)

In *Wyatt*, the defendants produced two documents purporting to show that the plaintiff inmate had failed to exhaust administrative procedures. *Wyatt*, 315 F.3d at 1116. The first document was an affidavit by a prison official explaining the three-step appeals process in California. *Id.* The document did not contain any information about whether the Plaintiff took advantage of all steps in the appeals process. *Id.* The second document was an "Appeals Record" which showed that the Plaintiff has only filed one appeal. *Id.* The Ninth Circuit noted that the affidavit failed to explain the significance of the Appeal Record or even authenticate it. *Id.* Thus, the Court held that the district court's finding that the defendant's evidence proved that the Plaintiff failed to exhaust administrative remedies was clearly erroneous because the documents produced by defendants were inadequate. *Id.* at 1120. The Court was particularly concerned that "[t]here is no evidence in the record establishing that the 'Appeal Record' is what defendants say it is" and that it could not determine whether "that document is a complete record of [Plaintiff's] appeals." *Id.* The Court remanded so that further evidence could be evaluated by the district court. *Id.* Similar to *Wyatt*, the declara-

tions submitted by defendant lack an adequate foundation necessary to establish that Plaintiff failed to exhaust administrative remedies.

At the hearing on Monday, September 18, 2006, Tonra and Hall testified extensively as discussed in *supra* Part II.C. Tonra, who is the appeals coordinator at Ironwood, provided a detailed overview of the administrative appeals system at Ironwood State Prison. Tonra testified that a hard copy of every 602 is maintained. Additionally, an electronic copy of each 602 is saved on an electronic database. Tonra stated that during his time at Ironwood (covering the time period of the events in question), the computer system has been accurate and been maintained in good repair. He has never discovered, nor has his staff reported, a discrepancy between the computer system and the hard copy. After reviewing both the hard copy records and the electronic records, Tonra concluded that the only 602 filed by Morton while at Ironwood related to visitation with minor.

Hall, who is the appeals coordinator at Corcoran, provided virtually identical testimony. based on review of the hard copy records of the 602s and the electronic database, Hall testified that Morton had not filed any 602 during his time at Corcoran.

■ Unlike a motion for summary judgment, if Plaintiff produces some evidence of exhaustion, the Court should then weigh the evidence "and decide disputed issues of fact." *Wyatt,* 315 F.3d at 1120. If the Court determines that Plaintiff has failed to exhaust, the Court should dismiss the claims without prejudice. *Id.*

The Court finds that the Defendant has sustained its burden to demonstrate the Plaintiff Morton did not exhaust his administrative appeals as required with regard to his assault and confinement claims. The testimony of Defendants' witnesses established an adequate foundation for the conclusion that Morton failed to exhaust administrative remedies. Additionally, the witnesses testified that the prisons' record keeping was accurate and reliable. Plaintiff has failed to produce any evidence to rebut the testimony of defendants' witnesses. The weight of the evidence clearly supports a finding the Plaintiff failed to exhaust administrative remedies for his assault and administrative segregation claim. Therefore, Plaintiff's 1983 claims based on the assault and confinement are dismissed without prejudice. *See Robinson v. Daniels,* 139 Fed.Appx. 822, 822 (9th Cir.2005); *see also Croft v. Rowley,* 2006 WL 2422833, at *1 (8th Cir. Aug.23, 2006).

### 2. Visitation Claim

Plaintiff's § 1983 claim is also based on the denial of Plaintiff's visitation with minors. Plaintiff's visitation restriction was imposed on July 11, 2003, pursuant to 15 California Code of Regulations § 3173.1. The regulation in effect during the relevant time period provided that "[i]nmates may be prohibited from having contact or non-contact visits where substantial evidence (e.g., court transcripts, police or probation officer report, or parole revocation hearing findings, describing the misconduct) of the misconduct described in section 3177(b)(1) exists, with or without a criminal conviction." 15 Cal.Code Regs. § 3173.1.[3] Section 3177(b)(1) defines mis-

---

**3.** The regulation was amended in December 2005. The apparent reason for the amendment was that the former version "had the odd effect of completely banning visits between a sex offender and a minor who was *not* the victim of his crime while allowing

visits between a sex offender and a minor who was his victim." *Valdez v. Woodford,* 2006 WL 2529378, at *1 (N.D.Cal. Aug.31, 2006). Here, the Plaintiff's visitation privileges were restricted because of his conviction for assaulting and murdering a minor.

conduct to include a violent offense involving a minor or family member. Because Plaintiff was convicted under California Penal Code § 187 (murder), the denial of visitation was permitted under 15 California Code of Regulations § 3173.1.

*a. Failure to State a Violation of the Constitution or Federal Statute*

■■■■ To state a claim for relief under § 1983, Plaintiff must demonstrate: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a person (4) acting under color of state law. *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir.1991). "[Section] 1983 'is not itself a source of substantive rights', 'but merely provides a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

■■■■ Plaintiff's claim based on the denial of visitation with minors pursuant to 15 California Code of Regulations § 3173.1 fails to allege a violation of rights protected by the Constitution or federal statute. Plaintiff alleges that the denial violates the Eighth Amendment.[4] (Complaint ¶ 10.) However, it is clearly established that the denial of certain visitation privileges does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Cooper v. Garcia* 55 F.Supp.2d 1090, 1099 (S.D.Cal.1999) ("[D]enial of family visitation privileges does not constitute cruel and unusual punishment") (citing *Toussaint v. McCarthy,* 801 F.2d 1080, 1113 (9th Cir.1986)); *see also Ramos v. Lamm,* 639 F.2d 559, 580 n. 26 (10th Cir. 1980) ("[W]eight of present authority clearly establishes that there is no constitutional right to contact visitation."); *Lynott v. Henderson,* 610 F.2d 340, 342 (5th Cir.1980) ("Convicted prisoners have no absolute constitutional right to visitation."). Plaintiff does not allege that the denial of visitation rights with minors violate the Due Process Clause.[5]

Plaintiff has not been denied all visitation rights; he can still be visited by non-minors. Additionally, Plaintiff's visitation restrictions were not imposed arbitrarily, but instead were imposed pursuant to 15 California Code of Regulations § 3173.1. Plaintiff has failed to show that the restriction of his visitation privileges constitutes a violation of the Constitution or federal statutes. Therefore, Defendants are entitled to summary judgment as a matter of law.

*b. Eleventh Amendment and Qualified Immunity*

Even if the Court were to find that the Defendants violated a Constitutional provision by denying Plaintiff visitation rights for minors, Defendants argue that they are

---

**4.** Plaintiff explains that "[t]he basis of [his] entire Complaint is that his rights under the Eighth Amendment were deprived and violated." (Pl.'s Opp'n at 6.)

**5.** The denial of visitation of a certain category of visitors does not violate the Due Process Clause because the Clause does not guarantee a right of unfettered visitation privileges. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460–61, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (holding prison regula-

tions limiting the types of visitors an inmate was permitted to receive did not give the inmate a liberty interest in receiving visitors that was protected by the Due Process Clause); *see also Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir.1996) ("[T]here is no constitutional right to 'access to a particular visitor.'") Similarly, no equal protection claim has been asserted, and even if it were, Plaintiff has failed to present any evidence of discriminatory intent.

protected by the 11th Amendment and qualified immunity.

■ Plaintiff has sued the defendants in both their official and personal capacities.[6] (Complaint ¶¶ 2–9.) Plaintiff is only seeking monetary damages and costs. (*Id.* ¶ 59.) To the extent that Plaintiff is suing defendants in their official capacity, damages are barred. *Kentucky v. Graham,* 473 U.S. 159, 168, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Absent waiver by a State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.") (citing *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

■ The defendants are also entitled to qualified immunity with respect to the personal capacity claims involving denial of visitation rights. "[G]overnment officials performing discretionary functions [are entitled to] qualified immunity, shielding them from civil damages as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted).

■ In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court established a three-part qualified immunity test. First, a court must determine whether the facts, "[t]aken in the light most favorable to the party asserting the injury ... show the [defendant's] conduct violated a constitutional right." *Id.* at 201, 121 S.Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* But, if a violation can be made out from the

submissions, then the court must next determine whether the breached constitutional right was "clearly established" at the time of the alleged violation. *Id.* The "clearly established" inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* Finally, if the court determines that the right was clearly established, the Court must determine whether a reasonable defendant in these circumstances would have thought that his or her conduct violated the alleged right. *Id.* at 205, 121 S.Ct. 2151. While the first two steps of the inquiry are pure legal questions, the third step requires a legal determination based on a prior factual finding as to the defendant's conduct. *Neely v. Feinstein,* 50 F.3d 1502, 1509 (9th Cir.1995).

As explained above, Plaintiff has not alleged a Constitutional violation. However, even if the Court found that Plaintiff has alleged a Constitutional violation, the right violated was not clearly established at the time of the alleged violation. A clearly established right is a right whose contours are "sufficiently clear that a reasonable official would understand [that] what [the official] was doing violates the right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. A government official "cannot be expected to predict the future course of constitutional law." *Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Plaintiff fails to point to any precedent suggesting that the limited deprivation of visitation rights is a Constitutional violation, and the Court cannot find any precedent to support the argument. *See supra* Part III.A.2.a. Given the absence of any precedent to support the proposition that the denial was a constitutional violation, the Court finds that no clearly established right exists. There-

---

6. All of the defendants, except the John Does, are employees of the state of California.

fore, Defendants would be entitled to qualified immunity on the 1983 denial of visitation claim.[7]

In sum, Defendants are entitled to summary judgment on the § 1983 minor visitation claim because Plaintiff failed to allege a violation of the Constitution or federal and, even if the Court found a violation, Defendants would be entitled to qualified immunity.

## B. The Unlawful Confinement Claim

As explained *supra* footnote 2, Plaintiff's "Unlawful Confinement" cause of action is merely a duplication of his § 1983 unlawful confinement claim. Therefore, for the reasons discussed in *supra* Part III.A, the claim is dismissed without prejudice for failure to exhaust administrative remedies.

## C. The State Law Claims

Plaintiff asserts state law claims of negligence, battery, and violation of California Civil Rights. Under 28 U.S.C. § 1367(a), a district court which has original jurisdiction over the action may exercise supplemental jurisdiction over all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Ninth Circuit states that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.1997) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. at 350 n. 7, 108 S.Ct. 614 (1988)).

The Court declines to exercise jurisdiction over the state law claims. First, dismissal of the claims is appropriate under *Acri* because all of the federal claims have been dismissed as explained in *supra* Parts III.A–B. Second, principles of comity favor dismissal because the remaining claims solely involve issues of state law such as whether California law requires the exhaustion of administrative remedies for state law claims. *See, e.g., Wright v. State*, 122 Cal.App.4th 659, 19 Cal.Rptr.3d 92 (2004).

## IV. REQUEST FOR ADDITIONAL DISCOVERY

Plaintiff asks the Court to delay ruling on Defendants' motion for summary judgment pursuant to Rule 56(f) to permit Plaintiff to conduct additional discovery. The Court notes that discovery has already been extended four times (the most recent was an extension granted on April 21, 2006, for an additional 122 days). For the reasons explained below, it is unnecessary for the Court to unravel the protracted and convoluted discovery dispute.

### A. Applicable Standard

██ Federal Rule of Civil Procedure 56(f) permits the Court to stay summary judgment in certain circumstances:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse

---

**7.** It is also unlikely that Plaintiff could satisfy the third step of the *Saucier* analysis because the Defendants acted pursuant to 15 California Code of Regulations § 1371.1. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir.1994) ("[The] existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable officer would find that conduct constitutional.")

the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may such other orders as is just.

Fed.R.Civ.P. 56(f). Although a Rule 56(f) affidavit does not need to present evidence going to the merits of the case, the affidavit must state (1) specific evidence that the affiant hopes to discover to raise a triable issue of material fact, and (2) facts establishing a likelihood that such evidence exists. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir., 1991); *see also VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir.1986) ("[D]enial of a Rule 56(f) application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.") "The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir.,1987) (citing *VISA Int'l Serv. Ass'n*, 784 F.2d at 1475).

██ A stay is especially appropriate "where the material sought is also the subject of outstanding discovery requests," *VISA Int'l Serv. Ass'n*, 784 F.2d at 1475, a motion to compel discovery is still before the court, *Morrison Flying Serv. v. Deming Nat'l Bank*, 340 F.2d 430 (10th Cir. 1965), the movant has neither answered nor objected to interrogatories, *Reid v. New Hampshire*, 56 F.3d 332 (1st Cir.

1995); *Sames v. Gable*, 732 F.2d 49 (3rd Cir.1984), or when one party has exclusive knowledge of the relevant facts, *Washington v. Cameron*, 411 F.2d 705, 710 (D.C.Cir.1969); *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir.1968); *Toebelman v. Missouri-Kansas Pipe Line Co.*, 130 F.2d 1016, 1022 (3d Cir.1942).

*B. Plaintiff's Declaration*

██ Plaintiff's lawyer, Konrad Trope, states that "Plaintiff Morton 'cannot for reasons stated [within this declaration as well as in Plaintiff's Memorandum of Points and Authorities] facts essential to justify the party's opposition.'" (Konrad Decl. ¶ 17.) Plaintiff appears to ask for a stay so that he can depose eleven additional witnesses.[8] However, neither Konrad's declaration nor his memorandum of points and authorities identifies these eleven witnesses. Plaintiff also appears to seek production of additional documents and a videotape. *See* footnote 6. Plaintiff seems to argue that such discovery is likely to produce evidence of the prison staff's attitude and policy which allegedly contributed to the assault.

Plaintiff has produced hundreds of pages of depositions, discovery requests, and communications with Defendants' counsel in an attempt to show that Plaintiff's counsel has been diligent with regard to discovery. Plaintiff also argues that defendants' counsel has repeatedly and intentionally frustrated the discovery process. Defendants produce their own documentation of discovery communications in order to show that discovery has been

---

**8.** Konrad states: "These additional eleven witnesses will provide information concerning both documents and 'unwritten policies,' and ths factual confirmation of 'deliberate indifference' to the constitutional rights of Plaintiff Morton: the documents, and previously identified videotapes concerning the investigation of the assault of June 18, 2003, documents concerning memoranda issued within Ironwood Prison addressing 'sensitive needs' inmates, and documents confirming the condoned attitude within Ironwood that inmates 'assume the risk' of knowing the 'unwritten rules' regarding 'sensitive needs' situations." (Konrad Decl. ¶ 18.)

plagued by unreasonable delays by Plaintiff.

Because the motion for summary judgment has been decided on procedural grounds, it would be useless to permit additional discovery. Therefore, it is unnecessary to analyze whether Konrad's declaration is sufficiently specific about what evidence is sought,[9] whether such evidence exists,[10] and how such evidence would prevent summary judgment.

## V. CONCLUSION

For the foregoing reasons, the battery and confinement federal claims are dismissed without prejudice for failure to exhaust administrative remedies. The Court GRANTS defendants' motion for summary judgment on the remaining federal claim (regarding denial of visitation with minors) because Plaintiff failed to allege a violation of the Constitution or a federal statute. The Court declines to exercise supplemental jurisdiction over the state law claims because all of the federal claims have been resolved. Therefore, the state law claims are dismissed without prejudice.

IT IS SO ORDERED.

---

9. The failure to identify the eleven witnesses Plaintiff seeks to depose weighs against granting the Rule 56(f) motion due to lack of specificity.

10. The hundreds of pages of depositions may indicate whether the evidence sought exists. However, Plaintiff fails to point out for the court which parts of the depositions indicate that the documents sought exists.