N.R. SMITH, Circuit Judge,
joined by TALLMAN and IKUTA, Circuit Judges,
dissenting:
Albino is a sympathetic plaintiff. However, that fact should not excuse Albino from his duty to exhaust , available administrative remedies, while other sympathetic plaintiffs are required to exhaust.
The Prison Litigation Reform Act of 1996 (PLRA) provides that “[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.” 42 U.S.C. § 1997e(a). “Available” means *1178 “capable of use for the accomplishment of a purpose,” and that which “is accessible or may be obtained.” Booth v. Chumer, 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (quoting Webster’s Third New International Dictionary 150 (1993)). Recently, the Supreme Court instructed us to adhere closely to the plain language of the statute and not interpolate our policy concerns into the statute. Jones v. Bock, 549 U.S. 199, 212, 216-17, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).
Here, the district court found administrative remedies that the County of Los Angeles offered in the jail were “capable of use” and could be obtained. Therefore, Albino had the obligation to exhaust these remedies before he could bring an action. The majority excuses Albino from that duty and instead places an affirmative duty on prison officials to inform inmates about the administrative remedies available. Nothing in the plain language of the PLRA even suggests that prison officials have the duties that the majority places upon them today. In other words, in order to afford relief to a sympathetic plaintiff, the majority takes extraordinary steps and (1) ignores the “clearly erroneous” standard of review in reviewing the district court’s findings; (2) mandates the production of unprecedented evidence in order for the defendants to meet their burden of proof on exhaustion; (3) grants summary judgment to the plaintiff sua sponte, without allowing the defendants the opportunity to produce the newly mandated evidence; and (4) changes the procedure by which our courts determine whether a plaintiff has exhausted administrative remedies. Because the majority’s interpretation and application of the PLRA in this case deviates from the approach required by the Supreme Court and creates a circuit split with the Eighth and Tenth Circuits, I must dissent.
I.
The majority rightly adopts the burden shifting framework for administrative exhaustion disputes applied in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n. 5 (9th Cir.1996). Maj. op. at 1172. When a defendant alleges a failure to exhaust, it “has the burden of raising the nonexhaustion of remedies as an affirmative defense and must show that ... remedies exist that the claimant did not use.” Maj. op. at 1172. (internal quotation marks omitted). Once a defendant shows that nonexhausted remedies exist, the plaintiff must show that the administrative remedies were unavailable to him. See Hilao, 103 F.3d at 778 n. 5.
Applying this burden shifting framework to all of the evidence presented by both parties, the magistrate judge found that Baca met his burden. The court supported its conclusion with the following factual findings: (1) a grievance procedure existed at the Jail; (2) the procedure was accessible to inmates; and (3) Albino failed to “avail himself of it.” The district court adopted these findings in full. Even Albino concedes that Baca met his burden, as did the dissenting panel member of the three judge panel. Albino v. Baca, 697 F.3d 1023, 1039-40 (9th Cir.2012) (Gilman, J., dissenting) (concluding instead that Albino met his burden of establishing unavailability).
A district court’s factual findings mandate our deference. The majority writes, “[Djisputed factual questions relevant to exhaustion should be decided by the judge.” Maj. op. at 1170. “[W]e will accept the judge’s factual findings ... unless they are clearly erroneous.” Maj. op. at 1171. This clear error standard “does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... Where there are two permissible views of the evidence, the *1179 factfinder’s choice between them cannot be clearly erroneous.” Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (emphasis added); see also United States v. Hink-son, 585 F.3d 1247, 1260 (9th Cir.2009) (“[0]ur review of a factual finding may not look to what we would have done had we been in the trial court’s place in the first instance, because that review would be de novo and without deference.”). The clear error standard of review “is significantly deferential” to the district court. Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 843 (9th Cir.2004). As a result, a trial court’s factual findings must be upheld when “falling] within any of the permissible choices the court could have made.” Hinkson, 585 F.3d at 1261.
In declining to defer to the district court’s factual findings in this case, however, the majority contends that “[i]t is black-letter law that in granting summary judgment a district court cannot resolve disputed questions of material fact.” Maj. op. at 1173. Because, in its view, the district court found only undisputed facts, it owes those findings no deference. See id. In so holding, it misunderstands the issue of exhaustion and the district court’s role as factfinder.
Even when a nonexhaustion allegation is raised in a summary judgment motion, “we review the district court’s ... factual findings for clear error.” Morton v. Hall, 599 F.3d 942, 945 (9th Cir.2010). Because the general summary judgment standard is designed to determine whether there “is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party,” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), it is inapposite in the exhaustion context. Instead, regardless of the form of the motion, district courts have simply decided the issue, and we have deferred to that finding on appeal. See, e.g., Morton, 599 F.3d at 944-46; Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).
This is so whether the findings pertain to disputed or undisputed facts. For instance, in Morton v. Hall, the district court ruled in favor of a defendant on its motion for summary judgment because the defendant had “sustained its burden to demonstrate the Plaintiff ... did not exhaust his administrative appeals as required.” 455 F.Supp.2d 1066, 1075 (C.D.Cal.2006). The district court’s factual findings, upon which it based this decision, were based on evidence not disputed by the plaintiff. Id. at 1075. On appeal, this court reviewed the district court’s factual findings and concluded that it “did not commit clear error by finding that Morton had failed to exhaust administrative remedies on his § 1983 assault claim.” Morton, 599 F.3d at 945 (emphasis added). Therefore, the majority’s contention that the presence of undisputed facts in this case gives it the right to find its own facts or attach differing weight to evidence than did the district court is without merit. The district court’s factual findings in deciding an exhaustion issue warrant our deference, whether disputed or undisputed.
Further, the trial court did decide disputed factual issues in this case. For example, “[t]he Court [found], based upon the submissions of the parties, that the Los Angeles County Jail had an accessible administrative procedure for seeking redress of grievances at the time of the incidents” despite Alibno’s allegations that the Jail never informed him of the grievance procedure. Indeed, only “in light of the Court’s finding that the jail had available administrative remedies,” was it able to conclude that “summary judgment based on failure to exhaust [was] warranted.” Thus, the trial court’s conclusion that *1180 there was no “genuine issue of material fact as to the existence of a grievance procedure at the jail, its accessibility to inmates, or Plaintiffs failure to avail himself of it,” was predicated upon its own factual findings to that effect. Regardless of the nature of these findings, this court may only overturn them if they are clearly erroneous. Morton, 599 F.3d at 945.
The trial court’s factual findings here are supported by ample evidence in the record. Nevertheless, the majority concludes “as a matter of law” that Baca failed to satisfy his burden of proving “that there was an available administrative remedy ... that Albino failed to exhaust.” Id. However, that is not what happened here. Rather, the majority impermissibly seizes on facts considered and weighed by the district court and arrives at its own conclusion. See Maj. op. at 1173-76; Anderson, 470 U.S. at 574, 105 S.Ct. 1504 (“[T]he court of appeals may not reverse [the district court’s account of the evidence] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.”).
The posture of the majority opinion speaks louder than the one sentence purporting to decide the case as a matter of law. Indeed, the majority develops its own facts to support its conclusion that Baca failed to carry his burden. See Maj. op. at 1173-76. That process is de novo review and conflicts with the Supreme Court’s instruction to accord deference to lower court findings, Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504, and the majority’s own framework, maj. op. at 1171. Further, the majority’s factual conclusions are wrong, as it discredits each piece of evidence supporting the existence of the Jail’s grievance procedure independently, absent consideration of the process as a whole.
First, the majority decides the Custody Division Manual § 5-12/010.00 “is of little help to defendants,” because Albino never saw it. Maj. op. at 1175. However, Baca did not submit the Custody Division Manual’s grievance procedure to prove Albino was aware of the procedure. He submitted it to document the existence of the procedure, as affirmed by Jail personnel. See Broum v. Valoff, 422 F.3d 926, 937 (9th Cir.2005). Indeed, “it is the prison’s requirements, and not the PLRA, that define the boundaries of proper exhaustion.” Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). This section of the Custody Division Manual gives credence to the testimony that the grievance procedure existed.
Next, the majority discredits the availability of the grievance procedure, because Inmate Complaint Forms were only “available for any inmate who requests them.” Maj. op. at 1175 (quoting Deputy Kelley’s declaration). However, the majority takes the quote out of context. Deputy Kelley’s affirmation also states that “Inmate Complaint Forms are available at various locations within the facility.” Further, the majority fails to recognize that Jail procedures do not require that complaints only be filed on an Inmate Complaint Form to be effective — a complaint will be considered so long as it is written.
Third, the majority takes issue with a locked complaint box, decrying Baca’s failure to confirm whether “the box is labeled in any way to indicate its function.” Id. at 1175. However, the majority ignores the fact that a complaint does not even need to be filed in a complaint box — the Jail would consider written complaints handed directly to Jail personnel.
The correct inquiry would have been to determine whether the district court’s factual findings were “plausible.” Lentini, 370 F.3d at 850. The evidence strongly supports the district court’s factual findings, namely the presence of an “available” *1181 administrative remedy that Albino failed to exhaust. Indeed, it is beyond comprehension how a procedure as simple as writing a few words on a piece of paper and handing it to Jail personnel could somehow be “[in]capable of use.” Maj. op. at 1171. The majority’s de novo review (in an effort to conclude otherwise) is inconsistent with governing law, the majority’s own framework, and conflicts even with Albino’s view of the law and facts. Albino never once argued that Baca failed to satisfy his burden, arguing rather that he had satisfied his own burden of showing how the procedures were effectively unavailable.
IL
The majority shoulders Baca with production of evidence never before required in proving failure to exhaust administrative remedies, focusing on the lack of evidence confronting Albino’s testimony that the Jail never informed him of administrative remedies. Maj. op. at 1175 (“[I]n-mates were not even told of the existence of the Manual.”); id. at 1175 (“[TJhere is nothing in Deputy Kelley’s statement indicating that inmates are told that a complaint must be in writing.”); id. at 1176 (“Staff members never told him that complaint forms were ‘available for any inmate who requests them.’ ”); id. at 1177 (“Nor was Albino told that he could write a complaint on an ordinary piece of paper and hand it to one of the deputies.”) (emphasis added in each).
Our prior prisoner exhaustion cases required jail officials to prove that they did not “hide the ball” from defendants. See, e.g., Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir.2010) (“[Ijmproper screening of an inmate’s administrative grievances renders administrative remedies ‘effectively unavailable’ such that exhaustion is not required under the PLRA.”); Nunez v. Duncan> 591 F.3d 1217, 1224 (9th Cir.2010) (excusing inmate’s failure to exhaust, because “he took reasonable and appropriate steps to exhaust his ... claim and was precluded from exhausting, not through his own fault but by the Warden’s mistake”); Mar ella v. Terhune, 568 F.3d 1024, 1027 (9th Cir.2009) (per curiam) (excusing inmate’s failure to exhaust, because he pursued some relief but was informed by prison personnel that no remedies were available). Today, the majority requires jail officials prove that, not only did they not hinder a prisoner’s access to administrative remedies, but also that they informed the prisoner of them. What comes in the next case to excuse a sympathetic plaintiff?
Albino’s counsel'conceded at oral argument that Albino never even asked if there were a grievance procedure. Although Albino spoke with his attorney about seeking medical care, the record does not show that he ever raised the issue of seeking protective confinement with him. His sole complaint: the Jail did not inform him of the procedure. As Baca’s counsel aptly noted in oral argument, this case boils down to an inmate that alleges “I didn’t see” rather than “I looked and couldn’t find”; that alleges “no one told me” rather than “I asked and wasn’t told or was told misinformation.”
Indeed, neither the PLRA nor the Supreme Court has ever imposed such a duty on jail officials (alleging failure to exhaust) when the prisoner only alleged ignorance of the procedures; nor have any of the federal courts of appeal.[1] To the contrary, the majority’s opinion creates a split with the Eighth and Tenth Circuits, which have held that such is irrelevant to defendants’ *1182 burden. See Chelette v. Harris, 229 F.3d 684, 688 (8th Cir.2000) (“Section 1997e(a) says nothing about a prisoner’s subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him.”); Yousef v. Reno, 254 F.3d 1214, 1221 (10th Cir.2001) (holding that there is “no authority for [the] assertion that the [prison] should have advised plaintiff of the need to follow BOP administrative procedures” (internal quotation marks omitted)).
It is no wonder then that Baca did not consider it necessary to confront Albino’s testimony about his alleged unawareness of administrative remedies. Instead, litigants in this circuit were presumed to have knowledge of duly enacted laws, regulations, and procedures. See Luna v. Holder, 659 F.3d 753, 759 (9th Cir.2011) (presuming aliens had notice of duly enacted federal regulations and guidelines issued thereunder). Grievance procedures in California jails are promulgated under the direction of state laws and regulations. See CaLPenal Code § 6030(a); CaLCode Regs. tit. 15, § 1073(a).[2]
III.
While our court may grant summary judgment sua sponte to a non-moving party, “we should not [do so] based on an issue that the movant had no opportunity to dispute in the district court.” Kassb-aum v. Steppenwolf Prods., Inc., 236 F.3d 487, 495 (9th Cir.2000) (citing Fountain v. Filson, 336 U.S. 681, 683, 69 S.Ct. 754, 93 L.Ed. 971 (1949)). Rather, “great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law.” Id. at 494 (quoting Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir.1996)) (alteration in original). In Kassbaum, the court saw the issues and the law aligning in the non-moving parties favor, but “in the exercise of caution,” it still declined to grant summary judgment sua sponte in favor of the non-movant. Id. at 495. The court respected the right of the parties to “have notice of [its] decision and an opportunity to be heard.” Id.
The majority fails to exercise such caution here. Instead, the majority mandates the production of evidence never before necessary for defendants to prove that a plaintiff did not exhaust his administrative remedies. Then, without providing prior notice to Baca or an opportunity to submit evidence required under its newly articulated ruling, it grants sua sponte summary judgment in Albino’s favor on the present record. The majority’s lip service to the Kassbaum standard is the antithesis of “great care.” 236 F.3d at 494.
No jail or prison in this circuit had previously been obliged to evidence that it *1183 had informed prisoners of administrative remedies to show those remedies’ availability. Likewise, an inmate’s subjective intent was previously inapposite to the inquiry. Thus, without notice, Baca has been afforded no opportunity to evidence, for example, (1) that the Jail actually informed Albino of the Jail’s grievance procedure; (2) the number of inmates filing written complaints under the present system; or (3) the nature and labeling of the locked complaint box. Before today, Baca had no reason to dispute Albino’s factual allegations to the contrary, because the resolution of those allegations was not necessary to resolving a motion for summary judgment for failure to exhaust administrative remedies.
Baca is entitled to notice and an opportunity to be heard. Kassbaum, 236 F.3d at 495. Given the new evidence which a defendant must hereafter produce to demonstrate the availability of administrative remedies, granting summary judgment sua sponte in favor of Albino is error. See Norse, 629 F.3d at 972.
IV.
Finally, the majority overrules circuit precedent to purportedly effect a “change of nomenclature” without changing the “practical operation” of court procedure dealing with exhaustion issues. Maj. op. at 1165-66. However, if the majority means what it says in the opinion, it effects more than a “change of nomenclature.”
Our opinion in Wyatt v. Terhune directed courts to treat a summary judgment motion alleging failure to exhaust administrative remedies “as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment.” 315 F.3d 1108, 1119 (9th Cir.2003). Because exhaustion is a matter of judicial administration rather than an issue regarding the merits, district courts could “look beyond the pleadings and decide disputed issues of fact.” Sapp, 623 F.3d at 821 (quoting Wyatt, 315 F.3d at 1119-20). In doing so, the court had “broad discretion as to the method to be used in resolving the factual dispute.” Ritza v. Int’l Longshoremen’s and Ware-housemen’s Union, 837 F.2d 365, 369 (9th Cir.1988) (per curiam) (internal quotation marks omitted). Then, on appeal, our court reviews the dismissal under Rule 12(b) de novo but reviews the district court’s factual findings for clear error. Id.
Under the purported authority of Jones v. Bock, the majority now pens this decision overruling Wyatt. In the future, an allegation of “failure to exhaust is more appropriately handled” as a motion for summary judgment. Maj. op. at 1165-66. Then if a factual dispute still persists at summary judgment, the motion must be denied. Id. at 1170-71. Then only on the eve of trial (or later) may the district court decide the issue of exhaustion. Id. at 1171. “On appeal, we will review the district judge’s legal rulings on exhaustion de novo, but we will accept the judge’s factual findings ... unless they are clearly erroneous.” Id. at 1171. This decision is particularly surprising for a number of reasons.
First, “[a] goal of our circuit’s decisions, including ... en banc decisions, must be to preserve the consistency of circuit law.” Miller v. Garmnie, 335 F.3d 889, 900 (9th Cir.2003). In other words, while an en banc panel has the authority to overrule circuit precedent, id. at 899, it must have a good reason to do so. I question whether a “change of nomenclature” constitutes such good reason.
Second, the Supreme Court cited Wyatt approvingly in Jones. 549 U.S. at 204 n. 2, 212, 127 S.Ct. 910 (holding that circuit courts treating exhaustion as an affirmative defense “have the better of the argument”). In light of this favorable citation, *1184 the majority’s decision to overrule Wyatt reads too much into Jones. Instead, it should “abide by the ‘duty of restraint, th[e] humility of function as merely the translator of another’s command.’” Id. at 216, 127 S.Ct. 910 (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L.Rev. 527, 533-34 (1947)) (alteration in original).
Finally, and most importantly, the Jones Court emphasized that “the PLRA mandates early judicial screening of prisoner complaints.” Jones, 549 U.S. at 202, 127 S.Ct. 910; accord Woods v. Carey, 722 F.3d 1177, 1182 (9th Cir.2013) (“Congress enacted the PLRA to ... provide for [frivolous prisoner lawsuits’] dismissal at an early stage.”). This “allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.” Jones, 549 U.S. at 204, 127 S.Ct. 910. Early judicial screening also helps “en-sur[e] that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit.” Id. at 203, 127 S.Ct. 910. However, by designating summary judgment as the appropriate procedure in which to address allegations of nonexhaustion, maj. op. at 1171, the majority’s new framework will delay resolution of exhaustion disputes. In fact, the majority opinion guarantees it. Only in “rare” cases may exhaustion be decided on a motion to dismiss. Id. at 1165-66. Then, even a decisive ruling at the summary judgment stage will be unlikely, because the district court cannot resolve factual disputes relating to exhaustion in deciding the motion for summary judgment. Id. at 1166, 1171. Only after denying summary judgment may the court then conclude whether a plaintiff has exhausted administrative remedies. Id. at 1171 Even though the majority has stipulated that exhaustion is not a jury issue, id. at 1166, its opinion has the effect of commissioning a trial (by the judge) to decide an issue that is widely viewed as one of judicial traffic control. Id. at 1170-71; Pavey v. Conley, 544 F.3d 739, 741 (7th Cir.2008). This new procedure is utterly inconsistent with the PLRA, which “mandates early judicial screening of prisoner complaints.” Jones, 549 U.S. at 202,127 S.Ct. 910.
In summary, while the majority correctly preserves the district court’s ability to make factual findings in determining an exhaustion issue and mandates our deference to the district court’s factual findings on appeal (though it refuses to do so here), it impermissibly alters the usual procedural practice in this circuit on the basis of perceived policy concerns. See Jones, 549 U.S. at 212, 127 S.Ct. 910. This alteration eliminates the district court’s ability to decide the exhaustion issue “at an early stage.” Woods, 722 F.3d at 1182. As a result, it effects much more than a “change of nomenclature.” Maj. op. at 1166.

. Indeed the majority did not cite a single case to support this novel proposition. See Maj. op. at 1175.

. Also instructive, the Third Circuit interpreted a statutory exhaustion provision similar to section 1997e(a) and declined to require a union to inform union members of grievance procedures in order for the procedures to be considered "available” under the exhaustion requirement. Donovan v. Local 1235, Int'l Longshoremen’s Ass’n, 715 F.2d 70, 75 (3d Cir.1983) ("The Secretary argues that we can [excuse the failure to exhaust, because] the union[] fail[ed] to inform its members as to the procedural requirements of its internal remedies.... The statute and regulations on which he relies do not support such a sweeping position. They provide only that the union must make its constitution and bylaws 'available' to its members.”). See also Hedges v. United States, 404 F.3d 744, 753 (3d Cir. 2005) (stating that the plaintiff “cites no cases for the proposition that the Government [(in this case the Department of the Interior)] has an affirmative duty to inform litigants ... that they have viable judicial, as well as administrative remedies," and refusing to "place such a responsibility on the Government which has inquiries from millions of individuals each year”).